1

2

3

4                    UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    CAROL S. DRAKE,                          Case No.  15-cv-01250-DMR
                Plaintiff,
8
         v.                                   **ORDER ON CROSS MOTIONS FOR
9                                             SUMMARY JUDGMENT**
     CAROLYN W. COLVIN,
10                                            Re: Dkt. Nos. 17, 22
                Defendant.
11

12          Plaintiff Carol S. Drake moves for summary judgment to reverse the Commissioner of the

13   Social Security Administration's (the "Commissioner's") final administrative decision, which

14   found Plaintiff not disabled and therefore denied her application for benefits under Title II of the

15   Social Security Act, 42 U.S.C. § 401 *et seq*.  The Commissioner cross-moves to affirm.  For the

16   reasons stated below, the court grants Plaintiff's motion and remands the action for further

17   proceedings.

18   **I.      PROCEDURAL HISTORY**

19          Plaintiff filed an application for Social Security Disability Insurance (SSDI) benefits on

20   December 29, 2011, alleging a disability onset date of August 1, 2011.  Administrative Record

21   ("AR") 178-85.  Her application was initially denied on June 27, 2012 and again on

22   reconsideration on February 22, 2013.  A.R. 138-42, 144-50.  Following the denial on

23   reconsideration, Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  A.R.

24   151-52.  Plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ")

25   Christopher R. Inama on November 20, 2013.  A.R. 58-99.

26          After the hearing, the ALJ issued a decision finding Plaintiff not disabled.  A.R. 23-33.

27   The ALJ determined that Plaintiff has the following severe impairments: obsessive-compulsive

28   disorder ("OCD"), generalized anxiety disorder, and hypochondriasis.  A.R. 25.  He also

United States District Court
Northern District of California

concluded that Plaintiff's "medically determinable impairments of hypothyroidism and alleged

chronic fatigue syndrome" were non-severe.  A.R. 26.  The ALJ found that through March 31,

2012, which is Plaintiff's date last insured, Plaintiff retained the following residual functional

capacity ("RFC"):

> [Plaintiff] had the residual capacity to perform light work, as defined in 20 CFR [§] 404.1567(b), with some exceptions. She was able to lift, carry, and push and pull 20 pounds occasionally and 10 pounds frequently; stand and walk for about six hours and sit for about six hours in an eight-hour workday, with normal breaks. [Plaintiff] would have to avoid concentrated exposure to fumes, odors, dusts, gases, and other pulmonary irritants. She was limited to work involving simple, routine, and repetitive tasks, with not more than occasional interaction with supervisors and co-workers and no more than occasional contact with the public.

A.R. 27.  Relying on the opinion of a vocational expert (VE) who testified that an individual with

such an RFC could perform other jobs existing in the economy, including laundry worker, sorter

of agricultural products, and photocopy machine operator, the ALJ concluded that Plaintiff is not

disabled.  A.R. 32.

The Appeals Council denied Plaintiff's request for review on January 12, 2015.  A.R. 1-7.

The ALJ's decision therefore became the Commissioner's final decision.  *Taylor v. Comm'r of

Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).  Plaintiff then filed suit in this court

pursuant to 42 U.S.C. § 405(g).

## II.     THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable

physical or mental impairment that prevents her from engaging in substantial gainful activity[1]  and

that is expected to result in death or to last for a continuous period of at least twelve months.

*Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The

impairment must render the claimant incapable of performing the work she previously performed

and incapable of performing any other substantial gainful employment that exists in the national

economy.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

*United States District Court*
*Northern District of California*

1    C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

2           1.      At the first step, the ALJ considers the claimant's work activity, if any.  If the

3    claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

4           2.      At the second step, the ALJ considers the medical severity of the claimant's

5    impairment(s).  If the claimant does not have a severe medically determinable physical or mental

6    impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of

7    impairments that is severe and meets the duration requirement, the ALJ will find that the claimant

8    is not disabled.

9           3.      At the third step, the ALJ also considers the medical severity of the claimant's

10   impairment(s).  If the claimant has an impairment(s) that meets or equals one of the listings in 20

11   C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will

12   find that the claimant is disabled.

13          4.      At the fourth step, the ALJ considers an assessment of the claimant's residual

14   functional capacity ("RFC") and the claimant's past relevant work.  If the claimant can still do his

15   or her past relevant work, the ALJ will find that the claimant is not disabled.

16          5.      At the fifth and last step, the ALJ considers the assessment of the claimant's RFC

17   and age, education, and work experience to see if the claimant can make an adjustment to other

18   work.  If the claimant can make an adjustment to other work, the ALJ will find that the claimant is

19   not disabled.  If the claimant cannot make an adjustment to other work, the ALJ will find that the

20   claimant is disabled.

21   20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99.

22   **III.    FACTUAL BACKGROUND**

23          **A.  Plaintiff's Testimony**

24          At the hearing before the ALJ, Plaintiff gave the following testimony.  Plaintiff is 55 years

25   old and has a bachelor's degree.  A.R. 87, 96.  She has not been able to work since August 2011

26   due to her OCD and "intrusive thoughts."  A.R. 67.  Plaintiff was self-employed for nearly all of

27   the previous 15 years.  A.R. 77.  She performed part-time desktop publishing work and pet-sitting.

28   A.R. 77-79.

United States District Court
Northern District of California

1     Plaintiff testified about a "breakdown" she suffered in July 2011, shortly before she

2  became unable to work.  While washing her car, Plaintiff thought she touched bird droppings.  As

3  a result, Plaintiff suffered insomnia and recurring intrusive thoughts about contamination for a

4  week or two.  A.R. 67-68.  The bird droppings incident was one example of something that

5  becomes the subject of Plaintiff's intrusive thoughts.  A.R. 68.  Plaintiff described other

6  manifestations of her OCD, including compulsive hand washing, and testified that she wears vinyl

7  gloves "for almost everything."  A.R. 70.

8     Plaintiff is in counseling and takes Celexa for her OCD and anxiety.  A.R. 69, 71.  The

9  medication helps her sleep, which is beneficial for her mental state.  A.R. 71.  Plaintiff also

10  participates in support groups.  She attends monthly meetings with two chronic fatigue support

11  groups and an OCD support group.  A.R. 72.

12     Plaintiff testified that she began experiencing chronic fatigue syndrome shortly before her

13  30th birthday.  A.R. 72.  She also has a phobia of germs.  She testified that she "likes things clean"

14  and is a perfectionist, but often lacks the stamina to clean.  A.R. 74.  She worries about contracting

15  diseases like AIDS and hepatitis C, and only recently began shaking people's hands and hugging

16  others.  A.R. 74-75.  She refuses to touch food with her bare hands and is the only person allowed

17  to unload her dishwasher.  A.R. 75.  Plaintiff also complained of water retention that made her feel

18  like she was wearing a "wet suit" between her abdomen and feet, which makes it difficult to walk.

19  A.R. 76.

20     Plaintiff testified that she can sit in a chair for about an hour before she needs to stand up.

21  A.R. 80.  She can stand for about 10 to 15 minutes, but "the water retention sometimes gets worse

22  if [she's] not moving."  A.R. 81.  She can walk for about 10 minutes and is able to walk up a flight

23  of stairs.  A.R. 81, 82.  Plaintiff's "lifting restriction" is 10 pounds.  A.R. 82.  Plaintiff testified

24  that she is able to bend at the waist to pick up an object from the ground, but cannot kneel or

25  crouch for any length of time.  A.R. 82-83.  Plaintiff also has residual symptoms from Guillain-

26  Barré syndrome, including weakness in her left arm, wrist, and hand.  A.R. 84.  She is right-

27  handed and has no issue using her right hand or arm unless her water retention "is bad."  A.R. 84-

28  85.  Plaintiff noted that the water retention sometimes makes her off-balance and sensitive to

United States District Court
Northern District of California

1    walking on certain types of paving.  A.R. 83.

2          Plaintiff is able to drive about every other day to do errands such as grocery shopping.  She

3    usually drives short distances of less than two miles and testified that in previous years she did not

4    leave her county because she was too weak and lacked the stamina to be in the car for long periods

5    of time.  A.R. 82, 86.  Plaintiff also owns and uses a computer for things like email and Facebook.

6    A.R. 82.

7          **B.  Relevant Medical Evidence**

8                    **1.  Uwe Jacobs, Ph.D.**

9          On February 22, 2013, Dr. Jacobs, a state agency psychological consultant, completed a

10   psychiatric review technique assessment. A.R. 126-30.  Dr. Jacobs found that Plaintiff is

11   moderately limited in activities of daily living, social functioning, and concentration, persistence,

12   or pace.  A.R. 127.  He also opined that Plaintiff is not significantly limited in the ability to carry

13   out very short and simple instructions but is moderately limited in her ability to carry out detailed

14   instructions.  A.R. 127.  Dr. Jacobs concluded that Plaintiff is moderately limited in her ability to

15   "complete a normal workday and workweek without interruptions from psychologically based

16   symptoms and to perform at a consistent pace without an unreasonable number and length of rest

17   periods," but "can follow a schedule, make decisions and complete basic work tasks on a

18   consistent basis."  A.R. 129.  He also opined that Plaintiff "has some limitations in working with

19   and around others, but can work in a setting with limited public contact[,] . . . adapt to minor

20   changes and handle the normal stressors of full time employment[,] . . . [and] meet the

21   expectations of full time employment doing basic work tasks with [limited public contact]."  A.R.

22   130.

23                    **2.  D. Graeme Shaw, MD**

24         The record contains three sets of opinions from Plaintiff's treating physician, Dr. Shaw.

25   On February 7, 2012, Dr. Shaw completed a mental capacity assessment and physical impairment

26   questionnaire.  A.R. 516-19, 526-28.  In the mental capacity assessment, Dr. Shaw noted his

27   diagnosis of chronic fatigue syndrome.  He opined that Plaintiff's functioning is moderately to

28   markedly limited in several areas, and stated Plaintiff "has poor concentration and short term

United States District Court
Northern District of California

1    memory" and "cannot tolerate any sustained job duties."  A.R. 517, 518.  In the physical

2    impairment questionnaire, Dr. Shaw opined that Plaintiff's prognosis is "guarded," and that

3    Plaintiff is not physically capable of working eight-hour day, five days a week employment on a

4    sustained basis.  A.R. 528.

5         On July 17, 2012, Dr. Shaw completed additional assessments.  A.R. 549, 551-53, 555-56.

6    In an anxiety-related disorders questionnaire, he opined that Plaintiff is extremely limited in

7    activities of daily living and social functioning, and markedly limited in maintaining

8    concentration, persistence, or pace.  A.R. 549.  In a mental capacity assessment and physical

9    impairment questionnaire, Dr. Shaw reiterated his diagnosis of chronic fatigue syndrome and

10   stated his opinion that Plaintiff "cannot tolerate mental & physical exertions associated with any

11   sustained job duties."  A.R. 552, 555.  He again indicated that Plaintiff is not physically capable of

12   working an eight-hour day, five days a week employment on a sustained basis.  A.R. 556.

13        Dr. Shaw completed a third assessment on August 12, 2013.  A.R. 825-27.  In a physical

14   impairment questionnaire, he diagnosed chronic fatigue syndrome with a "guarded" prognosis and

15   identified symptoms of severe fatigue, anxiety, insomnia, OCD and poor concentration.  A.R. 825.

16   He again opined that Plaintiff is not physically capable of working an eight-hour day, five days a

17   week employment on a sustained basis.  A.R. 826.  In an anxiety-related disorders questionnaire,

18   Dr. Shaw opined that Plaintiff is markedly limited in activities of daily living, social functioning,

19   and maintaining concentration, persistence, or pace.  A.R. 827.

20        In addition to these three sets of opinions, the record contains a letter dated February 20,

21   2014 from Dr. Shaw, in which he describes his 16-year treatment relationship with Plaintiff and

22   Plaintiff's 2011 "meltdown" of her OCD symptoms.  A.R. 1400.  In the letter, Dr. Shaw states

23   Plaintiff "has been incapable of working any job description since the summer (August) of 2011."

24   A.R. 1400.

25                          **3.  Lois Sharp, Ph.D.**

26        On March 7, 2012, Dr. Sharp, Plaintiff's treating psychologist, completed a medical source

27   statement.  A.R. 530-31.  Dr. Sharp opined that Plaintiff has "good" ability to understand and

28   remember very short and simple instructions and "fair" ability to attend and concentrate.  A.R.

United States District Court
Northern District of California

6

1    530-31.  Dr. Sharp noted Plaintiff's prognosis was "fair to poor."  A.R. 531.

2                          **4.  Janine Marinos, Ph.D.**

3           Dr. Marinos performed a psychological mental status examination of Plaintiff on April 17,

4    2012.  A.R. 542-44.  Plaintiff reported to Dr. Marinos that she is unable to work "because of

5    chronic fatigue syndrome and OCD."  A.R. 542.  Dr. Marinos diagnosed generalized anxiety

6    disorder, OCD, and hypochondriasis with a global assessment of functioning ("GAF") score of 50.

7    Dr. Marinos opined that "[b]ased on the current evaluation, [Plaintiff] would likely have at least

8    moderate, if not marked, difficulty at this time functioning effectively in a competitive work

9    setting because of her anxiety and preoccupation with her health," and that Plaintiff's prognosis is

10   "guarded at best."  A.R. 544.

11                         **5.  Donald B. Dufford, Ph.D.**

12          On October 2 and 4, 2013, Plaintiff saw psychologist Dr. Dufford for a diagnostic

13   evaluation.  A.R. 1380.  Dr. Dufford assessed Plaintiff with severe OCD and described various

14   obsessions and compulsions, which he wrote "cause great emotional distress and substantial

15   impairment in social and occupational performance."  A.R. 1380.  Dr. Dufford opined that

16   Plaintiff's "distressing, intrusive thoughts and "frequency and length of time spent on compulsions

17   result in significant impairment to accomplishing normal life activities such as self care, shopping,

18   social interaction and being able to keep a job."  A.R. 1380.

19                     **6.  Records from the Bill Wilson Center**

20          The record contains records of Plaintiff's group and individual therapy sessions at the Bill

21   Wilson Medical Center for the periods June 7, 2012 through August 3, 2013 and October 3, 2013

22   through November 14, 2013.  A.R. 608-706, 1392-98.  The group therapy records do not indicate

23   the names of participants.  *See, e.g.*, A.R. 609-611, 613.

24   **IV.   STANDARD OF REVIEW**

25          Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the

26   Commissioner denying a claimant disability benefits.  "This court may set aside the

27   Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal

28   error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the

2    record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See*

3    *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a mere scintilla, but less than a

4    preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted).

5    When performing this analysis, the court must "consider the entire record as a whole and may not

6    affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec.*

7    *Admin*., 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

8          If the evidence reasonably could support two conclusions, the court "may not substitute its

9    judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112

10   F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's

11   decision for harmless error, which exists when it is clear from the record that the ALJ's error was

12   inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d

13   1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

14   **V.    ISSUE PRESENTED**

15         1.      Whether the ALJ erred in weighing the medical opinions.

16   **VI.   DISCUSSION**

17         Plaintiff argues that the ALJ erred with respect to the opinion of examining physician Dr.

18   Marinos.  Specifically, she argues that the ALJ implicitly rejected Dr. Marinos's opinion that

19   Plaintiff would "likely have at least moderate, if not marked, difficulty at this time functioning

20   effectively in a competitive work setting" but did not give legally sufficient reasons for doing so.

21   Plaintiff does not challenge the ALJ's weighing of any other medical opinions in the record and

22   does not challenge any other aspect of the ALJ's opinion.

23         **A.  Legal Standard**

24         Courts employ a hierarchy of deference to medical opinions based on the relation of the

25   doctor to the patient.  Namely, courts distinguish between three types of physicians: those who

26   treat the claimant ("treating physicians") and two categories of "nontreating physicians," those

27   who examine but do not treat the claimant ("examining physicians") and those who neither

28   examine nor treat the claimant ("non-examining physicians").  *See Lester v. Chater*, 81 F.3d 821,

830 (9th Cir. 1996).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion.  *Id*.

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  A treating physician's opinion, while entitled to more weight, is not necessarily conclusive.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons."  *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188.  If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion.  *Lester*, 81 F.3d at 830.  The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick*, 157 F.3d at 725 (citation omitted).  "[B]road and vague" reasons do not suffice.  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  This same standard applies to the rejection of an examining physician's opinion as well.  *Lester*, 81 F.3d at 830-31.  A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant).  An opinion that is more consistent with the record as a whole generally carries more persuasiveness.  *See* 20 C.F.R. § 416.927(c)(4).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B. Analysis

In April 2012, Dr. Marinos performed a complete mental status examination of Plaintiff and diagnosed generalized anxiety disorder, OCD, and hypochondriasis.  She assessed a GAF score of 50.  Dr. Marinos opined that "[b]ased on the current evaluation, [Plaintiff] would likely have at least moderate, if not marked, difficulty at this time functioning effectively in a competitive work setting because of her anxiety and preoccupation with her health," and that her prognosis is "guarded at best."  A.R. 544.  The ALJ discussed Dr. Marinos's opinion and diagnosis in his decision, including Dr. Marinos's opinion that Plaintiff would "likely have at least moderate, if not marked, difficulty at this time functioning effectively in a competitive work setting."  A.R. 30.  The ALJ then stated that Dr. Marinos's opinion "is not inconsistent with relevant mental health records in evidence, such as those from the Bill Wilson Center . . . [f]or this reason and based on her examining status, Dr. Marinos' opinion is afforded weight, to the extent that it comports with the above captioned residual functional capacity."  A.R. 30.  Plaintiff contends that in determining that Plaintiff could perform sustained work, the ALJ implicitly rejected the portion of Dr. Marinos's opinion that Plaintiff would "likely have at least moderate, if not marked, difficulty at this time functioning effectively in a competitive work setting."  Plaintiff argues that the ALJ did not give a legally sufficient explanation for rejecting this portion of Dr. Marinos's opinion.

The ALJ's decision did not specifically state whether he adopted Dr. Marinos's opinion about Plaintiff's general ability to "function effectively in a competitive work setting."  Instead, as noted, he wrote that he "afforded weight" to her opinion "to the extent that it comports with the above captioned residual functional capacity."  A.R. 30.  This statement is vague and makes it difficult to discern whether the ALJ incorporated Dr. Marinos's opinion into his residual functional capacity assessment, rejected it as inconsistent with the same, or simply ignored it.  However, the ALJ's conclusion that Plaintiff could perform light work with some limitations appears inconsistent with Dr. Marinos's opinion.

An ALJ is not required to adopt all of an examining physician's assessment.  *Magallanes*, 881 F.2d at 753.  However, an ALJ *is* required to explain the reasons for rejecting those portions

10

United States District Court
Northern District of California

1    of an examining physician's assessment that the ALJ chooses not to adopt.  *Lingenfelter v. Astrue*,

2    504 F.3d 1028, 1038 n.10 (9th Cir. 2007).  Moreover, ignoring portions of a physician's opinion is

3    considered an implicit rejection of the opinion and failure to offer reasons for doing so is legal

4    error.  *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).  When an examining physician's

5    assessment is uncontradicted, the ALJ should provide "clear and convincing" reasons for rejecting

6    that opinion.  *See Lester*, 81 F.3d at 830; *see also* 20 C.F.R. § 416.927(d)(2).  Here, the decision

7    did not address whether Dr. Marinos's assessment of Plaintiff's ability function in a competitive

8    work setting was uncontradicted or not; however, "[t]he opinion of an examining doctor, even if

9    contradicted by another doctor, can only be rejected for specific and legitimate reasons that are

10   supported by substantial evidence in the record."  *Lester*, 81 F.3d at 830-31 (citing *Andrews v.*

11   *Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).  It appears that Dr. Marinos's opinion was

12   contradicted by the opinion of state agency medical consultant Dr. Jacobs, who concluded that

13   Plaintiff "can follow a schedule, make decisions and complete basic work tasks on a consistent

14   basis" and "can work in a setting with limited public contact[,] . . . adapt to minor changes and

15   handle the normal stressors of full time employment[,]. . . [and] meet the expectations of full time

16   employment doing basic work tasks with [limited public contact]."  A.R. 129-30.  Accordingly,

17   the ALJ was required to provide "specific and legitimate" reasons supported by substantial

18   evidence to reject portions of those opinions.  *Lester*, 81 F.3d at 830-31.

19         The court finds that the ALJ did not provide specific and legitimate reasons supported by

20   substantial evidence to reject Dr. Marinos's opinion because he did not provide any reasons to

21   reject that opinion.  In fact, the ALJ noted that Dr. Marinos's opinion "*is not inconsistent* with

22   relevant mental health records in evidence," including the records from the Bill Wilson Center.

23   A.R. 30 (emphasis added).  Finding a medical opinion consistent with evidence is not a legitimate

24   reason to reject or accord less weight to that opinion.[2]

25

26   _____

27   [2] It is possible that the statement "is not inconsistent" was a typographical error.  The court has
     reviewed the records of Plaintiff's individual and group therapy sessions at the Bill Wilson Center,
     a number of which indicate that Plaintiff's mood was "relaxed," "happy," or both, which could be
28   interpreted as inconsistent with Dr. Marinos's opinions about Plaintiff's mental status.  *See, e.g.*,
     A.R. 631, 641, 645, 646, 647, 649, 654, 657, 661.

United States District Court
Northern District of California

1    The Commissioner offers her own arguments to support the ALJ's residual functional

2    capacity determination.  For example, the Commissioner contends that to the extent Dr. Marinos's

3    findings conflicted with other medical evidence in the record, including Dr. Jacobs's opinion, the

4    ALJ appropriately exercised his discretion to resolve those conflicts.  However, as noted, the ALJ

5    did not note any conflicts between her opinion and any other evidence, and in fact noted that Dr.

6    Marinos's opinion was *consistent* with Plaintiff's therapy records.  "Long-standing principles of

7    administrative law require [this court] to review the ALJ's decision based on the reasoning and

8    factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the

9    adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-

10   26 (9th Cir. 2009) (citation omitted).  "A clear statement of the agency's reasoning is necessary

11   because [the court] can affirm the agency's decision to deny benefits only on the grounds invoked

12   by the agency." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  Accordingly, since

13   the ALJ did not provide specific or legitimate reasons supported by substantial evidence to reject

14   Dr. Marinos's opinion that Plaintiff would "likely have at least moderate, if not marked, difficulty

15   at this time functioning effectively in a competitive work setting," the court finds that the ALJ

16   committed legal error with respect to evaluating Dr. Marinos's opinion.

17       **C.  The ALJ's Error Was Not Harmless**

18       The court cannot say that the ALJ's error was harmless in the overall disability

19   determination.  *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an

20   ALJ's error is harmless when it is "irrelevant to the ALJ's ultimate disability conclusion.").  Here

21   the ALJ relied on the VE's testimony to determine whether Plaintiff is capable of performing any

22   work in the national economy, but in questioning the VE the ALJ did not include any limitation

23   consistent with Dr. Marinos's opinion that Plaintiff would "likely have at least moderate, if not

24   marked, difficulty at this time functioning effectively in a competitive work setting." A.R. 87-88.

25   "The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out

26   *all* the limitations and restrictions of a particular claimant.'" *Valentine v. Comm'r. of Soc. Sec.*

27   *Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.

28   1988)); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's

1    hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no

2    evidentiary value to support a finding that the claimant can perform jobs in the national economy."

3    (citation omitted)).  The ALJ's decision about Plaintiff's mental impairments and RFC may

4    change after properly analyzing the underlying medical opinions on this issue, and that decision

5    could alter the testimony provided by the VE.  The court therefore cannot find the ALJ's error was

6    harmless to the final determination of Plaintiff's disability.

7         **D.  Remand for Further Proceedings**

8         In her reply brief, Plaintiff narrows her requested relief to a remand for further

9    administrative proceedings.  She does not ask the court to find her disabled on the current record

10   and remand for payment of benefits.  Accordingly, the court remands this case for further

11   proceedings consistent with this opinion.

12   **VII.   CONCLUSION**

13        For the foregoing reasons, the court finds the ALJ's decision not fully supported by

14   substantial evidence in the record.  Accordingly, the court remands this case for further

15   proceedings consistent with this opinion.

16

17        **IT IS SO ORDERED.**

18   Dated: September 6, 2016



19   _____
     Donna M. Ryu
20   United States Magistrate Judge

21

22

23

24

25

26

27

28

*United States District Court*
*Northern District of California*